THOMAS SNELL'S EXECUTORS

*v.*

WILLIAM SNELL et al.

A testator gave a life estate in certain lands to his wife, with remainder in fee to his executors, with directions that, after her death, they should convert the property into cash and divide the proceeds among his children when the youngest should have attained twenty-five years of age.—*Held*, that the executors could, with the widow's consent, sell the lands in question in her lifetime.

Bill for construction of will &c.   On final hearing on pleadings and proofs.

*Mr. E. W. Strong,* for complainants.

THE CHANCELLOR.

This suit is brought to obtain a construction of the will of Thomas Snell, deceased, late of Middlesex county, who died September 1st, 1874.   By the will (which was made in August, 1874), the testator, after directing payment of all his debts and liabilities, gives to his wife, for her life, his farm and household furniture, live stock and farm implements and everything mova-

ble or immovable in and about the farm then belonging to him.. To his executors he gives, in trust, $15,000, which they are to invest and keep invested during her life, and pay her the income thereof not exceeding $1,000 per annum. He then directs that after her death the farm and the $15,000 shall "revert" to his executors and "be disposed of by them in the same manner as the rest and residue of his estate thereinafter mentioned." He next gives to his executors, in trust for the benefit of his heirs-at-law, his sons Thomas, Robert, George and William, land in Westchester county, New York, and leaseholds in the city of New York, with power to convert them into money at any time before the estate shall be divided, and whenever, in their judgment, the estate will be benefited by the sale. He then gives to his executors, in trust for the benefit of "said heirs-at-law" (his sons), all and singular the rest and residue of his estate, "both real and personal, consisting of bonds, stocks, notes and money and other securities," and declares that it is his will that his

NOTE.—The general rule that, where a power of sale is to be exercised at a specified time, its attempted execution before then is invalid, has been recognized in this state, in *Booraem* v. *Wells, 4 C. E. Gr. 87; Hampton* v. *Nicholson, 8 C. E. Gr. 423.*

In *Isham* v. *Del., Lack. and West. R. R. Co., 3 Stock. 227,* lands were conveyed, in 1834, in trust to be leased until 1840, and then to be sold, and the proceeds invested, and the interest therefrom paid to the grantor's sisters, A. and S., for life, and to their children after their death, until the youngest child should be twenty-one, and then the principal to be divided among said children *per capita.* In 1836, before A. and S. had married, they, with the trustee, reconveyed the lands to the original grantor. A. and S. afterwards married, and, in 1856, both had children.—*Held,* that the reconveyance, in 1836, was void, but capable of confirmation by the trustee after 1840. See *Hetzel* v. *Barber, 69 N. Y. 1.*

In *Fairly* v. *Kline, Pen.* \*754, lands were devised, in 1785, to testator's wife for life or widowhood, and then power was given to the executor to sell and divide the proceeds among testator's children, equally. In 1797, the executor sold the lands, *with the widow's consent,* and paid over the proceeds to the surviving children, who paid the widow £5 each, annually, until her death, in 1801. No question as to the validity of the executor's sale was raised, as the case turned on another point.

In *Meyrick* v. *Coutts, 1 Sug. on Powers* \*335 [\*350], under a devise to testator's wife for life, and after her decease, a power to trustees to sell and to pay the money among the children of B., who had an infant child then living, a

. Snell's Executors *v.* Snell.

estate shall not be divided or the heirs be paid their respective shares thereof until the youngest of them shall have attained the age of twenty-five years; and he further directs that upon the arrival of the youngest of them at that age, the estate shall then be divided among them in equal shares. He also directs that until such division or distribution shall take place, the executors invest and keep invested the money of the estate and accumulate it, and adds that they are not to pay away any portion of it except in the case of the illness or death of any of his "said heirs-at-law," in which event they are to have power to make such disbursements as in their discretion the emergency may require. He also provides that in case any of his "said heirs" shall die before the division of the estate shall take place, the share of such decedent shall, if he be married and have issue, go to the issue; but if no issue, then the decedent's wife shall "receive her dower out of said share, and the rest and residue shall revert to the surviving heirs."

bill by the widow against the trustees and infant for an immediate sale, was, after two arguments, dismissed.

In *Smith* v. *Great Northern R. R. Co.*, *23 W. R. 126*, a testator gave to his wife the personal use of a leasehold messuage for her life, and if she should not think fit to reside therein, the premises should form part of his residuary estate. He then directed the conversion of his real estate, with power in his executors to postpone such conversion. Under the trusts of the residue, the widow took one-fourth of the income. A railway company having taken the premises, under its compulsory powers, while the widow was in occupation, made an agreement with her as to her interest, and a separate agreement with the trustees.—*Held*, that, although the house, subject to the interest of the widow, was part of the residuary estate, it would not be a proper exercise of the executor's trust to sell during the continuance of the widow's occupation.

In *Mosley* v. *Hide*, *17 Q. B. 91*, lands were conveyed to trustees, to the use, after the husband's death, of his wife for life, and on trust, upon her death, to sell and divide the purchase-money among the children of the marriage on their respectively attaining twenty-one. E. and M. were the children, *and after they had attained twenty-one*, and the husband had died, the trustees, during the wife's lifetime, sold the lands.—*Held*, that the sale was void. See *Cox* v. *Day, 13 East 118.*

In *Want* v. *Stallibrass, L. R. (8 Exch.) 175*, vendors sold as trustees under a will which devised the estate to them on trust to pay the income to F. S. for life, and thereafter to sell the estate and hold the proceeds "upon the trusts for the children of F. S.;" and it was further stated by counsel that F. S.

The questions submitted for decision are whether the executors have power to sell the farm; and if so, whether they can execute the power before the death of the widow, she being desirous that the sale be made and being willing to join with them in the conveyance or to convey or release her estate to them or the purchaser.

The testator intended to give his wife, for life, the farm (with remainder in fee to the executors), and $1,000 a year of the interest of $15,000; the rest of his property (except, of course, the $15,000) to go to his executors, to be converted by them into cash and invested for the benefit of his children, and to be equally divided among the latter when the youngest should have attained to the age of twenty-five years. At the death of the widow, whether before or after the youngest child should have reached the age of twenty-five years, the $15,000 and the farm were to be disposed of in like manner with the rest of the estate.

The executors undoubtedly have power to sell the farm. The

would join in conveying the property. The trusts for the children were that the proceeds should be paid to those who were living at testator's death, to be paid to them at twenty-one, or if daughters, at twenty-one or on marriage. All of said children were over twenty-one at the time of the sale.—*Held,* that specific performance would not be decreed.

In *Henry* v. *Simpson, 19 Grant's Ch. 522,* a testator gave to his wife during her life all the rents and issues of his property for her sole use; then that his property should be divided into three shares—one to his wife, one to his daughter M., and one to his daughter E.; that M. should have her portion after her mother's death, and should invest it for the benefit of her children; that E. should have one-half of her portion absolutely, and the interest of·the other half for her life, and that then this half should go to M.'s children, unless E. had a child, and if so, to E.'s child. The wife and daughters were executrixes.—*Held,* that the lands could not be sold during the lifetime of the wife, even with her consent.

In *Davis* v. *Howcott, 1 Dev. & Bat. Eq. 460,* there was a devise of the use of certain lands to testator's widow during the term of her natural life, and after her death said lands were to be sold by the executors and the proceeds of the sale divided among testator's four children or their survivors. The widow and executors, by order of the court, on their joint petition, sold the lands, and no part of the purchase-money ever came to the use of the children.—*Held,* that their legal title to the land, after the widow's death, was not barred.

· In *Jackson* v. *Ligon, 3 Leigh 161,* power to sell lands was given to an executor after the death or marriage of testator's wife, for whom he made provision

Snell's Executors *v.* Snell.

will provides that after the decease of the testator's widow that property is to "revert" to the executors and be disposed of by them in the same manner as the rest and residue of the estate thereinafter mentioned. It then gives to the executors the land and leaseholds in New York, with express power of sale. This is followed by the gift to them, in trust, for the benefit of the testator's children, of all the rest and residue of his estate, both real and personal. This gift of the New York property and the residue is for the purpose of enabling the executors to take care of, invest and accumulate those parts of the estate and divide them when the time of distribution arrives. The gift is unqualified, except by the trust. Moreover, it is of personal and real estate blended together, to be divided and paid over in shares, and in the meantime to be invested for accumulation.

Where an executor is directed by the will or bound by law to see to the application of the proceeds of the sale, and no direction

in his will. The wife renounced those provisions, and the executor sold thereafter, while she was living and unmarried, and his sale was held void.

In *Rope* v. *Sanders, 21 Gratt. 60,* under a similar will, dower was assigned to the widow after her renunciation, and she subsequently joined with the executor in selling the devised lands.—*Held,* that the executor had no power to sell during her widowhood; and held, further, that the court could set aside the sale, so far as made by the executor, and confirm it, so far as made by the widow.

In *Hall* v. *McLaughlin, 2 Bradf. 107,* testator devised certain property to his wife during her widowhood *until* his youngest son should arrive at age, when he directed it to be sold by his executors and the proceeds divided. The widow died before the youngest son attained twenty-one. A petition by one of those entitled to the proceeds of the land when sold, to compel the executor to sell, was dismissed. *Query.* Under such circumstances, who is entitled between the death of the widow and the time when the youngets son attains twenty-one? See *Levet* v. *Needham, 2 Vern. 138; Mansfield* v. *Dugard, 1 Eq. Cas. Abr. 195; Carter* v. *Church, 1 Ch. Cas. 113; Boraston's Case, 3 Co. 19; Lomax* v. *Holmeden, 3 P. Wms. 176; Coates* v. *Needham, 2 Vern. 65; Castle* v. *Eate, 7 Beav. 296; Laxton* v. *Eedle, 19 Beav. 321; Green* v. *Tribe, 38 L. T. (N. S.) 914; Simpson* v. *Cook, 24 Minn. 180; Williams* v. *Murrell, L. R. (23 Ch. Div.) 360.*

In *Sutherland* v. *Northmore, 1 Dick. 56,* a *feme covert* had a power, under her marriage settlement, to create a term and to raise money after the death of her husband. Her execution thereof, during her husband's lifetime, was, on the case being sent to the king's bench, held to be good; and this holding the .

is given as to the person by whom sale is to be made, or if the
proceeds of sale in the disposition are mixed up and blended with
the personalty—which it is the duty of the executor to dispose
of and pay over—then a power of sale is conferred by implica-
tion. *Lippincott* v. *Lippincott, 4 C. E. Gr. 121.* There can
be no doubt that the executors have power to sell the farm,
and I am of opinion that, with the consent of the widow, and on
her releasing to them or to the purchaser her life estate, or join-
ing with the executors in their conveyance of the property, they
may lawfully convey the farm at once. The will provides that
after the widow's death the farm shall " revert " to them, and be
disposed of by them in the same manner as the rest and residue
of the estate thereinafter mentioned. The intention of the tes-
tator, in this provision, was to give to the executors the remain-
der in fee. And he intended that, after the termination of his

court of chancery confirmed. See *Wandesforde* v. *Carrick, L. R. (5 Irish Eq.)
486.*

In *Duke* v. *Palmer, 10 Rich. Eq. 380,* a testator appointed his wife and son
executors, and gave to his wife several slaves during her life, and at her death
to be sold and equally divided among his lawful heirs. The son alone quali-
fied as executor, and afterwards, with his mother's co-operation, sold one of
the slaves for a full consideration. The mother survived eleven years there-
after.—*Held,* that one of testator's heirs could not, after the mother's death,
set aside the sale as against a *bona fide* purchaser of the slave from the original
purchaser, but that his only remedy was against the executor for the proceeds
of the sale.

In *Bazemore* v. *Davis, 48 Ga. 339,* lands were held in trust for A for life, and
at her death, to her children. The trustee sold and conveyed the whole estate,
as trustee, A entering on the deed a written consent to its execution.—*Held,*
that A did not thereby forfeit her life estate in the premises, so that a right
of action immediately accrued to the remaindermen. See, also, *Champlin* v.
*Champlin, 3 Edw. Ch. 571; Styer's Appeal, 2 Grant's Cas. 453; Loomis* v. *Mc-
Clintock, 10 Watts 274; Bartles's Case, 6 Stew. Eq. 46; Greene* v. *Aborn, 10 R.
I. 10.*

The court has no jurisdiction to order a sale before the time designated in
the power, on the ground that it would be beneficial to the parties, *Johnstone*
v. *Baker, 8 Beav. 233; Bristow* v. *Skirrow, 27 Beav. 590; Blacklow* v. *Laws, 2
Hare 40; Troy* v. *Troy, Busb. Eq. 85; Simpson* v. *Cook, 24 Minn. 180, 27 Id.
147;* nor the legislature, *Rodman* v. *Munson, 13 Barb. 63; Ervine's Appeal, 16
Pa. St. 256;* see *Clarke* v. *Hayes, 9 Gray 426; Mohr* v. *Porter, 51 Wis. 504;
Forster* v. *Forster, 129 Mass. 564; Cooley's Const. Lim. (4th ed.) *97.*—Rep.

wife's life estate, whether by death or otherwise, the property should go to them. There is no evidence of any intention, on his part, that it shall be held unsold until after her death, for any reason, whether prospective rise in value, benefit of infant children or anything else. The possibility that the widow might desire to part with her interest in the property before her death, was not contemplated by him, and it seems clear that, had he contemplated it, he would have provided for the sale of the property by the executors and her together, or by them with her consent. In *Uvedale* v. *Uvedale, 3 Atk. 117*, where a testator, by his will, directed that his wife should have the rents &c. of certain lands for her life, and directed that, after her death, the property be sold, Lord Hardwicke said that the words, "after her death," were not put in to postpone the sale, and directed that the sale be made. See, also, *Co. Litt. 113 a note; 8 Vin. Abr. 466, 469; Sug. on Powers 349, 350*. In *Gast* v. *Porter, 13 Pa. St. 533*, it was held that a power given to executors to sell at the death of the widow was well executed, if the widow, for whose benefit the sale was postponed, joined as one of the executors in the deed, and that the fee would pass to the purchaser. The decision was put on the ground that the intention of the testator governed the case, and made it an exception to the general rule, that a devise to executors to sell on a contingency cannot be executed until the contingency happens. And so, too, in *Styer* v. *Freas, 18 Pa. St. 339*. Mr. Ram, in his work on Assets, says : " The rule to be deduced from the cases is that, where the property which is the subject of the power of sale is devised for life, the time for sale will depend on the intention to be collected from the whole will; and, so far as the particular words may not be governed by the context in the will, on the weight due to the authorities, grounded on the same or similar expressions, and, consequently, the time for sale may be either before or after the death of the tenant for life, according to the circumstances of the particular case." *Ram on Assets 108*.

In the case under consideration the testator gives a life estate to his wife with remainder in fee to his executors, and directs

(substantially) that after her death they convert the property into cash to divide it among his children. Here is not a mere power of sale, but a gift of the property to the executors in fee, subject to the life estate. The widow wishes to remove from the farm and desires to have it sold, if possible, and for that purpose is willing to relinquish her life estate and to convey it to the executors or to the purchaser, or any one else, in order to make a clear title to the property. George Snell is dead. He died since the testator's death. He was never married and left no will. Thomas and William are both past the age of twenty-five years. The former is thirty-eight and the latter twenty-seven. Robert left his home in 1871 and has never since (a period of about thirteen years) been heard from, although much effort has been made to obtain tidings of him. He was then unmarried. If living, he is now about thirty-four years old. Thomas Snell and Maltby G. Lane are the executors. They are desirous of selling the property. A price is offered for it, which, in their judgment, and in that of William, also, is a good one, and they and he think it would be advantageous to all persons interested to sell it at that price. In my judgment, the executors, with the consent of the widow and her release of her life estate, have power to sell the property now.